FRED W. JONES, Jr., Judge.
Mrs. Joyceleen Loche was allegedly injured when struck on the head by a portable sign pole in the parking lot of a Bastrop shopping center. Ultimately made defendants in the ensuing litigation were the owner of the shopping center, its insurer, the liquidator of the manufacturer of the sign pole, the minor child who allegedly knocked over the sign pole, and the mother of the minor child.
Following trial on the merits, judgment was rendered only against the mother of the minor child, but was reduced to $9,901.82 because of her impecunious condition.
Mrs. Loche and her husband appealed the judgment, contending the trial judge erred in (1) not finding the shopping center owner and the maker of the sign pole strictly liable for the accident; (2) not finding the shopping center owner negligent in use of the sign pole; (3) awarding inadequate damages; (4) subtracting vacation pay from lost income; and (5) not awarding future medical expenses.
For the reasons hereinafter set forth, we affirm.
On the afternoon of March 27, 1981 Joy-celeen Loche was a patron at the Washington Square Shopping Center in Bastrop, Louisiana. After starting to leave the shopping center she met a friend, Emma Johnson, on the sidewalk/fire lane area in front of Kent’s Store. Mrs. Johnson was on her way into the shopping center along with her ten year old daughter, Latonia Parham.
The two women became engaged in a conversation in front of a portable sign pole used to keep the fire lane clear of obstructions. The sign pole consisted of a pipe embedded in a concrete-filled tire rim. It was approximately seven feet high and weighed 76 pounds. Attached to the pipe were signs which read “No Parking Fire Lane” and “Tow Away Zone.”
During the conversation the minor child began to play on the sign pole, causing it to tip over and hit Mrs. Loche on the back of the head and shoulder.
Suit was instituted by the Loches against the owner of the shopping center, Standard Associates Management & Consultants, Inc. (Standard) and their insurer. Standard and the insurer third partied Mrs. Johnson, her minor child, and R.L. Johnson as liquidator of Linemarkers, Inc., the manufacturer of the portable sign pole. Plaintiffs thereafter amended the petition to name these latter parties as defendants.
At trial both Mrs. Johnson and Mrs. Loche testified they did not observe the minor child as they were talking prior to the accident. The minor child testified she was swinging on two stationary canopy poles on either side of the portable sign pole when she struck the sign pole with the *302 fingers of her right hand, causing it to tip over and hit Mrs. Loche. The minor denied swinging on the sign pole itself.
Two witnesses, both working at nearby stores, testified they had a clear view of the event surrounding the accident through the glass front of those stores. Mr. Francis Malone observed the minor child with her arm around the sign pole, swinging on it. Mrs. Nell Farrar, testifying by deposition, saw the minor child swinging around the sign pole with her feet on the outside of the rim. Both stated the sign pole fell and struck Mrs. Loche because of the minor child’s swinging.
No witnesses could recall seeing children playing on the sign pole in the past. However, it was established that the sign poles were occasionally toppled by vehicles or high winds. Jeffery Underwood, Standard’s vice president responsible for marking the fire lanes, stated there were never complaints about the portable sign poles.
Plaintiffs’ expert civil engineer, John Ashbrook, determined that once the sign pole was moved past the center of gravity point (15 degrees from vertical) it would fall from its own weight. At the four foot mark on the sign pole (the height of the minor child) ten pounds of pressure would topple the pole. Ashbrook concluded the sign pole was defective because it was top heavy; however, he admitted a steady, constant pressure was necessary to topple the pole.
Jerry Madden, also accepted as an expert civil engineer, testified the sign pole was not defective in its normal use and function. He stated it required a sustained force, applied at a greater angle than 15 dégrees, to push the sign pole through the point at which it will fall from its own weight.
Jimmy Porter, Chief of Fire Prevention of the Bastrop Fire Department, testified the sign pole met the local and state fire code requirements. He further stated that when signs are placed in a fire lane it is necessary that they be portable so they can be moved in the event of fire.
Faced with this evidence, the trial court made the following finding of fact in written reasons for judgment:
“Due to all of the evidence in the case including an in-court demonstration in which the sign pole was struck repeatedly and with great force, this Court makes a factual finding that the sign pole was not, in fact, struck or knocked over by the minor as the minor testified but, in truth, was caused to fall by the minor swinging round and round on the pole as testified to by Mrs. Farrar and Mr. Malone.”
After making this finding, the trial court found Emma Johnson strictly liable to plaintiffs for the actions of the minor child under La. Civil Code Article 2318 and Turner v. Bucher, 308 So.2d 270 (La.1975).
As to the remaining defendants the trial court found plaintiffs failed to prove the sign pole was defective and, even if defective, that it did not pose an unreasonable risk of harm.
Plaintiffs argue that regardless of the actions of the minor, the remaining defendants created circumstances which presented an unreasonable risk of harm by placing the sign pole in an area where many young children are expected to be present. Plaintiffs claim there were safer alternative means of lawfully marking the fire lane.
In the recent case of Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982) our supreme court explained:
“In a strict liability case [as opposed to a typical negligence case]_the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner’s duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which *303 usually gives rise to a duty under negligence concepts....
“Thus, while the basis for determining the existence of the duty_is different in C.C.Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same.” (p. 497)
Justice Dennis pointed out in his concurring opinion in Kent:
“All of these ‘unreasonable risk’ tests imply a process of balancing the risk against the value of the interest which the defendant is seeking to protect, and the expedience of the course pursued. Prosser, at p. 149. This is the standard negligence test. In strict liability, except for the element of the defendant’s knowledge, the test is the same as that for negligence.” (p. 501)
See Tipton v. Bossier Parish School Board, 441 So.2d 453 (La.App. 2d Cir.1983).
Thus, the issue is: Did placing this portable sign pole in the fire lane of a shopping center, where children are present, create an unreasonable risk of harm to Mrs. Loche? Considering factors such as likelihood and gravity of harm, benefits and purpose of the sign pole, as well as its utility and effectiveness, we conclude the trial court correctly found it did not present an unreasonable risk of harm.
We agree with the trial court finding that normal use of the sign pole does not involve children playing on same and, but for the act of the minor child, the sign pole would not have fallen on Mrs. Loche.
Therefore, the trial court did not err in absolving the shopping center owner, its insurer, and the manufacturer of the sign pole of liability either on the theory of strict liability or of negligence.
After being struck on the head by the sign pole, Mrs. Loche remained dizzy and groggy for ten to twenty minutes. That night she was treated at the hospital for a bruised scalp.
The week following the accident was a paid vacation for Mrs. Loche from her secretary job. She experienced head and neck pain throughout the week.
After being treated by her family doctor, Dr. Donald, who diagnosed her injury as a strain of the cervical spine, Mrs. Loche began treatments by Dr. Chorette, an internist, in August 1981. He diagnosed her injury as a cervical muscular strain, but noticed considerable improvement after the initial examination.
Due to persistent head and neck pain, Mrs. Loche began treatment by Dr. Hawthorne, a chiropractor, in November 1982.
For a short time during the treatment period Mrs. Loche was hospitalized and wore a prescribed cervical collar. The injuries caused her to be absent from work for an extended period.
Based on this evidence the trial court awarded plaintiffs medical expenses of $3,520.74, and lost income of $2,667.83. In addition, the court found Mrs. Loche would be entitled to a general damage award for pain and suffering of $10,000. However, employing the rationale of Guy v. Tonglet, 379 So.2d 744 (La.1980), the court considered Mrs. Johnson’s inability to pay a sizeable judgment. Therefore, the award for pain and suffering was fixed at $2,500.
Plaintiffs argue the trial court abused its discretion in awarding inadequate general damages; in deducting the vacation pay Mrs. Loche received for the week immediately after the accident from the lost income award; and in failing to award future medical expense for chiropractic treatments.
Considering the extent of the injuries Mrs. Loche suffered and the impecunious condition of Mrs. Johnson (a fact which is not contested by plaintiffs), we are unable to say the trial court abused its discretion in making the general damage award of $2,500. Additionally, any error in subtracting the vacation pay from the lost income award is of little consequence considering the inability to pay. Therefore, the lost income award will not be disturbed.
The trial judge stated that the past chiropractic treatments were excessive; *304 however, he awarded the total medical expense incurred therein because Mrs. Loche did suffer the inconvenience and expense of the treatments. This fact undoubtedly affected his decision not to award any future medical expenses for chiropractic treatment, which was within his broad discretion.
For these reasons, we affirm the judgment of the district court, at appellants’ cost.